## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAM FRIERSON,

               Petitioner,

v.

                                        CASE NO. 2:24-CV-12456
                                        HONORABLE NANCY G. EDMUNDS
                                        UNITED STATES DISTRICT COURT JUDGE

ERIC RARDIN,

               Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS BROUGHT PURSUANT TO 28 U.S.C. § 2241, GRANTING THE MOTION FOR CLARIFICATION (ECF No. 8), AND GRANTING PETITIONER LEAVE TO APPEAL _IN FORMA PAUPERIS_

William Frierson, ("Petitioner"), currently incarcerated at the Federal Correctional Institution in Milan, Michigan, filed a _pro se_ petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the Bureau of Prisons' (BOP) refusal to apply his earned time credits under the First Step Act (FSA) and the Second Chance Act (SCA) toward early release to pre-release custody. Respondent filed an answer to the petition for writ of habeas corpus. For the reasons stated below, the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is DENIED.

### I. Background

Petitioner pleaded guilty to distributing more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) in the United States District Court for the Eastern District of Michigan. Petitioner was sentenced to ten years in prison, followed by a five-year term of supervised release. _See United States v. Frierson_, No. 19-cr-20374 (E.D. Mich.).

Petitioner filed a petition for writ of habeas corpus, claiming that the Bureau of Prisons is not properly calculating his time credits under the First Step Act and the Second Chance Act, claiming that if they were properly calculated, he is entitled to immediate release to pre-release custody to either a residential reentry center (RRC) or home confinement.  Respondent filed a response to the petition. Petitioner filed a reply to the response.

In order to determine an inmate's First Step Act credits (FTCs), The BOP uses a FSA Time Credit Assessment, also known as the FTC Worksheet, to estimate the projected target dates for each prisoner. Petitioner's most recent FTC Worksheet, dated November 7, 2024, is attached as Exhibit 2 to the Declaration of Jeremy Cooper, which is Respondent's Exhibit A. (ECF No. 10-2, PageID. 78).  With the application of good time credits, Petitioner has a Projected Release Date of January 28, 2028. Petitioner has earned 365 days of FTCs towards early release. Petitioner's FSA Projected Release Date is calculated by subtracting 365 days from January 28, 2028, moving his Projected Release Date up to January 28, 2027. Next, the FSA Conditional Placement Date reflects the maximum amount of FTCs an eligible inmate can earn towards pre-release confinement using the inmate's current risk level. Between the start of his sentence and January 28, 2027, the maximum amount of FTCs that Petitioner can potentially earn towards pre-release confinement using his current risk level is 355 days. Petitioner's FSA Conditional Placement Date is calculated by subtracting 355 days from January 28, 2027.  That date, February 7, 2026, is the earliest date under the First Step Act that Petitioner's earned FTCs could equal the remainder of his term of imprisonment, using the best case scenario, and thus constitutes Petitioner's Conditional Placement Date. *See* Cooper Decl. at ¶ 7 & FTC Worksheet. (ECF No. 10-2, PageID. 68-69, 78). Adding to that the maximum 365 discretionary days available towards pre-release custody under

the Second Chance Act, the earliest that Petitioner could be eligible for release to an RRC or home confinement is February 7, 2025. (*Id.*).

Petitioner in his petition and reply argues that he is entitled to immediate release to pre-release custody because the BOP had previously set a condititional release date of November 6, 2024. Regarding his allegation that his conditional placement date had been calculated on an earlier FTC Worksheet dated September 3, 2024, which listed a FSA Conditional Placement Date of October 20, 2025, Respondent argues that this earlier FTC Worksheet is incorrect, and was issued in error. Jeremy Cooper, the Correctional Programs Administrator for the Northern Central Regional Office, explained that in early September 2024, a new "Planning" section was added to the FTC Worksheets. Within a few days, BOP learned that the new "Planning" section was causing issues and confusion. The Conditional Planning Dates were incorrect, and corrected FTC Worksheets were not immediately available. On September 6, 2024, Cooper issued BOP employees a directive to refrain from using the FTC worksheets for any type of prerelease planning until formal guidance was provided. The BOP issued a memorandum on October 4, 2024, which provides guidance to BOP employees as to how to calculate conditional placement dates. *See* Cooper Decl. at ¶¶ 2, 3, 4,5, See also BOP Memorandum dated October 4, 2024, First Step Act (FSA) Planning Dates. (ECF 10-2, PageID. 67-68, 72-74).

## II. Discussion

### A. The motion for clarification (ECF No. 8).

Petitioner filed a motion for clarification as to whether his petition was being treated by the Court as being brought pursuant to 28 U.S.C. § 2241 or if it is being treated as being brought pursuant to 28 U.S.C. § 2254, the statute for a state prisoner to challenge his or her state conviction.

Petitioner labeled his petition as being brought under 28 U.S.C. § 2241, but he points to the Order Amending Caption, which indicates that the petition is being brought under 28 U.S.C. § 2254. (ECF No. 2, PageID. 14).

The Court recognizes that the proper statute for a federal prisoner to seek habeas relief is under 28 U.S.C. § 2241 and not 28 U.S.C. § 2254. The reference to the latter statute in the order amending caption was a typographical error. The Court grants the motion to clarify that the petition is being brought pursuant to 28 U.S.C. § 2241.

### B. Exhaustion of Administrative Remedies

Federal inmates are normally required to exhaust administrative remedies for their claims before filing a § 2241 habeas corpus petition. *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir.2013). Petitioner concedes that he did not exhaust his administrative remedies for his claims, claiming that it would be futile to so. The Sixth Circuit has indicated that "the habeas exhaustion requirement is not without exception," nor "statutorily required." *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 236, 235 (6th Cir. 2006). "If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either 'excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court.'" *Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990), *abrogated in part on other grounds by Reno v. Koray*, 515 U.S. 50 (1995)).

Petitioner's claims do not warrant habeas corpus relief, and it would be a waste of time and resources to require exhaustion of administrative remedies or to address petitioner's argument that

it would be futile to do so. The Court therefore excuses the exhaustion requirement and will proceed to address the merits of the claims.

### C. The merits of the petition.

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). Petitioner's application is properly brought under Section 2241 because he is challenging the manner in which his sentence is being executed.

Eligible federal inmates, those whose convictions do not exclude them from receiving First Step Act benefits, may earn FTCs. An eligible inmate can earn 10 FTCs "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). An inmate can earn an additional 5 FTCs during those 30 days if (1) his or her recidivism-risk rating is minimum or low and (2) his or her risk of recidivism has not increased for two consecutive recidivism assessments by the BOP. 18 U.S.C. § 3632(d)(4)(A)(ii); *See also* 28 C.F.R. § 523.42(c)(2). A federal prisoner may lose earned FTCs for violating the requirements or rules of programs or as a sanction for a prohibited act. 28 C.F.R. § 523.43(a).

A maximum of 365 days of FTCs may be applied towards a prisoner's early transfer to supervised release, basically shortening their sentence by up to one year. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d). Eligible prisoners may have any remaining FTCs applied towards early transfer to pre-release custody, either in a residential reentry center or home confinement. 28 C.F.R. § 523.44(c).

Because certain requirements must be met before FTCs can be applied toward an inmate's sentence, the BOP makes a distinction between "earned" FTCs and "applied" FTCs. For earned FTCs to be applied to a sentence, an eligible prisoner must have (1) earned FTCs in an amount equal to his or her remaining term of imprisonment, (2) shown through periodic risk assessments a demonstrated reduction in recidivism risk or maintained a low or minimum risk during his or her incarceration, and (3) had the remainder of his term computed under applicable law. 18 U.S.C. § 3624(g)(1); 28 C.F.R. §§ 523.44(b)-(d). Only "earned" FTCs "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

The BOP makes some projections of a federal prisoner's potential to earn FTCs in the future. The BOP, by way of example, will initially estimate a conditional projected release date based on the maximum potential FTCs that a federal prisoner could earn during his or her sentence. The BOP, in their most recent memorandum dated October 4, 2024, notes that the FSA Conditional Placement Date "reflects the maximum amount of FSA Federal Time Credits an FSA eligible individual can earn towards pre-release confinement (RRC/WRC [Residential Reentry Centers, Work-Release Centers] or home confinement) given their current PATTERN risk level. If this date is 'N/A' then the AIC [Adult in Custody, i.e. prisoner] will not earn any FTCs towards pre-release placement and the SCA [Second Chance Act] conditional placement date should be used for planning." BOP Memorandum dated October 4, 2024, First Step Act (FSA) Planning Dates. (ECF No. 10-2, PageID. 73).   The memorandum further notes that the FSA Conditional Placement Date is merely a projection "used for planning purposes" and is "not considered final until the FTCs are applied and/or community placement is approved. These dates may change based on AIC behavior, programming participation, or changes in eligibility." (*Id.*). Finally, the memorandum cautions that "it is critical that AICs and staff understand this is a PLANNING TOOL which will be used to

help prepare individuals for placement in the community, these dates are not guaranteed and are subject to change based on behavior, program participation, eligibility, appropriateness, and community resources." (*Id.*)(emphasis original).

In addition to the FTCs, the BOP also assesses each inmate individually under the Second Chance Act (SCA) to determine whether they might qualify for up to 365 additional days of early transfer to prerelease custody. The SCA give the BOP the authority to determine an inmate's eligibility for RRC placement. *See* Second Chance Act of 2008, Pub. L. No. 110-199, § 251(a), 122 Stat. 657, 692–93 (April 9, 2008), 18 U.S.C. § 3624(c). The Second Chance Act provides that the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). The decision to place an inmate in pre-release community confinement under the SCA is discretionary and will be "determined on an individual basis" according to the five factors contained in 18 U.S.C. § 3621(b)—known as "five factor review." 73 Fed. Reg. 62,440, 62,441 – 42 (Oct. 21, 2008). These factors include: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission. See 18 U.S.C. § 3621(b).

As an initial matter, inmates have no right under the federal constitution to earn or receive sentencing credits. *See Moore v. Hofbauer,* 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001)(citing *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir. 1992)).  Additionally, a federal prisoner does not have a constitutionally protected liberty interest in earning future sentence credits. *See Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002).

"Courts that 'have considered the issue have routinely found that a federal inmate does not have a liberty interest in receiving credits under the First Step Act.'" *Fontanez v. Rardin*, No. 2:23-CV-12415, 2024 WL 1776338, at * 3 (E.D. Mich. Apr. 24, 2024)(quoting *Sedlacek v. Rardin*, No. 2:23-CV-11899, 2024 WL 965607, at * 2 (E.D. Mich. Mar. 5, 2024)); *See also See Cheng v. United States*, 725 F. Supp. 3d 432, 440 (S.D.N.Y. 2024)(Taiwanese prisoner subject to removal under the immigration laws did not have a liberty interest in receiving FSA credits); *White v. Warden*, No. CV DKC-22-2371, 2023 WL 4867562, at * 10 (D. Md. July 31, 2023)(prisoner "did not have a liberty interest in the opportunity to earn" FSA time credits); *Fiorito v. Fikes*, No. 22-CV-0749 (PJS/TNL), 2022 WL 16699472, at * 6 (D. Minn. Nov. 3, 2022)("the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest"); *Gant v. King*, No. 23-CV-1766 (NEB/ECW), 2023 WL 6910771, at * 3 (D. Minn. Oct. 19, 2023)("prisoners do not have a protected liberty interest in the application of FSA time credits"); *Mars v. Heisner*, No. CV-22-01933-PHX-SPL (JZB), 2023 WL 4977335, at * 7 (D. Ariz. June 26, 2023)(concluding that a prisoner does not "have a constitutional right to 'apply' his FSA [time credits] in a specific manner, such as demanding that he be granted prerelease custody or home confinement"), *report and recommendation adopted*, 2023 WL 4960411 (D. Ariz. Aug. 3, 2023); *Bloom v. Fed. Bureau of Prisons*, No. 19-21589 (KMW)(SAK), 2022 WL 341200, at *2 (D.N.J. Feb. 4, 2022)("prisoners have no constitutionally protected liberty interest in an opportunity to earn additional good time or similar credits").

In *Fiorito*, 2022 WL 16699472, at * 6, the court referred to First Step Act time credits as FTCs and noted that they "are not a general entitlement.  Instead, federal inmates are merely afforded the *opportunity* to earn FTCs by participating in recidivism-reduction programming." (emphasis original).  The court continued:

The general rule that the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest makes particular sense in the context of FTCs, as the opportunity to participate in recidivism-reduction programming can be lost for several reasons, including reasons having nothing to do with the conduct or blameworthiness of the prisoner. For example, a prisoner who is temporarily transferred from the custody of the BOP to a non-BOP facility to testify at trial, *see* 28 U.S.C. § 2241(c)(5), would be unable to successfully participate in BOP recidivism reduction programming during the time that the prisoner remained outside the custody of the BOP, *see* 28 C.F.R. § 523.41(c)(4)(iii). The same would be true of a prisoner who is transferred to a hospital for extended treatment of a serious medical need. *See id.* § 523.41(c)(4)(ii). The statute and accompanying regulations betray no expectation that FTC credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various times during his detention. This is too flimsy an expectation to give rise to a protected liberty interest.

*Id.*

Other courts have reached the same conclusion. *See White*, 2023 WL 4867562, at *10 (discussing the holding in *Fiorito* and stating that its "analysis is sound"); *Gant*, 2023 WL 6910771, at * 3 ("Given the contingent nature of the application of FSA time credits to prerelease custody, they cannot reasonably be regarded as an entitlement.")

Likewise, "[T]he Second Chance Act does not guarantee a one-year RRC placement, but only directs the BOP to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence." *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at *2 (6th Cir. Dec. 29, 2009); *see also Demis v. Sniezek*, 558 F.3d 508, 513–14 (6th Cir. 2009).

Finally, the BOP was not bound to honor the original conditional placement date of October 20, 2025 contained in the earlier FTC worksheet once the BOP determined that the new Planning Section on the FTC worksheet was creating errors. Because the initial conditional placement date was erroneous, Petitioner would not be entitled to habeas relief based on the BOP's failure to honor that original date. *See, e.g., Stinson v. Martinez*, No. 2:23-CV-0751, 2024 WL 4969169, at * 5, n.

2 (W.D. La. Nov. 12, 2024), *report and recommendation adopted*, No. 2:23-CV-0751, 2024 WL 4965618 (W.D. La. Dec. 3, 2024). [1]

To the extent that Petitioner asks this Court to release him specifically to home confinement (ECF No. 1, PageID. 10), this Court lacks the power to do so. The prerelease custody statute does not give federal inmates an enforceable entitlement to any particular form of prerelease custody and provides merely an authorization, rather than a mandate, for nonprison confinement at the end of a federal sentence. *See Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469-70 (10th Cir. 1992). Congress has defined pre-release custody as home confinement or placement in a residential reentry center. 18 U.S.C. § 3624(g)(2). "Although Congress has authorized the BOP to utilize either or both of these types of pre-release custody, it does not prescribe when one should be used rather than the other, nor does it mandate the use of home confinement. Instead, this is left to the discretion of the Bureau of Prisons, and there is no statutory requirement that any inmate be designated to home confinement for any portion of his sentence." *Frey v. Martinez*, No. 2:23-CV-0822, 2024 WL 3264823, at *2 (W.D. La. June 3, 2024), *report and recommendation adopted*, No. 2:23-CV-0822, 2024 WL 3257126 (W.D. La. July 1, 2024).

More importantly, this Court has no power to order that Petitioner be released to home confinement. Under 18 U.S.C. § 3621(b), the Bureau of Prisons, not the judiciary, "is responsible for designating the place of a prisoner's imprisonment." *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015). The BOP's "designation of a place of imprisonment ... is not reviewable by any court." 18 U.S.C. § 3621(b). Moreover, the petitioner "enjoys no statutory or

---

[1] Petitioner's request to have the BOP apply his FSA earned time credits to transfer him to prerelease custody may become moot if he is released as scheduled on February 7, 2025 to prerelease custody. *See Marshek v. Eichenlaub*, 266 F. App'x 392, 392-93 (6th Cir. 2008).

constitutionally protected right, or entitlement, to transfer to…home confinement." *Heard v. Quintana*, 184 F. Supp. 3d 515, 521 (E.D. Ky. 2016); *See also Kaiser v. Hollingsworth*, No. CV 16-1288 (RBK), 2016 WL 6246308, at *4 (D.N.J. Oct. 25, 2016) ("Petitioner has no liberty interest in being placed in home confinement as opposed to being placed in an RRC.").  The First Step Act did not alter the BOP's statutory authority to determine when, or if, a prisoner should be released to a residential reentry center or to home confinement. *See Mingo v. Bragg*, No. CV 9:20-0010-TMC-MHC, 2020 WL 8371203, at *2 (D.S.C. July 28, 2020), *report and recommendation adopted*, No. CV 9:20-0010-JD-MHC, 2021 WL 327377 (D.S.C. Feb. 1, 2021); *See also United States v. Curry*, No. CR 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019)("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief.")(emphasis original).

## III.  ORDER

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 is **DENIED.**  Because a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States,* 355 F.3d 501, 504 (6th Cir. 2004), Petitioner need not apply for one with this Court or with the Sixth Circuit before filing an appeal from the denial of his habeas petition.  The Court **GRANTS** Petitioner leave to appeal *in forma pauperis* because any appeal would be taken in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

s/Nancy G. Edmunds
**HONORABLE NANCY G. EDMUNDS**
**UNITED STATES DISTRICT JUDGE**

**Dated: February 5, 2025**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 5, 2025, by electronic and/or ordinary mail.

                                  <u>s/Marlena Williams</u>
                                    Case Manager